**[Cite as *In re A.P.*, 2024-Ohio-5985.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

IN RE:

       CASE NO. 7-24-06

    A.P.,

ALLEGED ABUSED CHILD.       **O P I N I O N**

[CATHERINE P. - APPELLANT]

---

**Appeal from Henry County Common Pleas Court**
**Juvenile Division**
**Trial Court No. 20233034**

**Judgment Reversed**

**Date of Decision: December 23, 2024**

---

**APPEARANCES:**

    *Michael G. Aird* **for Appellant**

    *Melody R. Wilhelm* **for Appellee**

**MILLER, J.**

{¶1} Appellant, Catherine P. ("Catherine"), appeals from the April 30, 2024 dispositional order by the Juvenile Division of the Henry County Court of Common Pleas, which found Catherine's son ("A.P.") to be an abused child pursuant to R.C. 2151.031(C). For the reasons that follow, we reverse the trial court's adjudication of A.P. as an abused child and vacate the continuing restrictions imposed in the trial court's July 25, 2024 judgment.

**I.      FACTS AND PROCEDURAL HISTORY**

{¶2} On November 27, 2023, the Henry County Department of Job and Family Services (the "Agency") filed a complaint alleging that A.P. was an abused child as defined in R.C. 2151.031(D), i.e., that he "[e]xhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or any injury or death which is at variance with the history given of it." (Nov. 27, 2023 Complaint). The Agency did not allege that A.P. was an abused child under any other division of R.C. 2151.031. Among the allegations made by the Agency were that Catherine admitted to using THC (tetrahydrocannabinol) throughout her pregnancy, Catherine admitted to consuming alcohol while pregnant, and Catherine tested positive for THC at admission to the hospital for A.P.'s birth. Additionally, the Agency alleged that A.P.'s urine tested positive for THC and he was suffering from withdrawals due to Catherine's alcohol consumption during the pregnancy.

The Agency also alleged there were reported concerns for Catherine's mental health and lack of bonding with A.P.

{¶3} Significantly, at the initial appearance and shelter care hearing that took place the next day, the Agency moved to amend the basis of its abuse complaint from division (D) of R.C. 2151.031 to division (C). The court granted the motion, and the Agency's complaint was amended in accordance with that request. Following the shelter care hearing, the court determined it was in A.P.'s best interests to stay in the temporary custody of the Agency until further hearing.

{¶4} On April 2, 2024, the court held an adjudication hearing. Based on its findings, the trial court determined A.P. "is an abused child, as defined by Ohio Revised Code 2151.031(C)." (Apr. 15, 2024 Judgment Entry). The court explained that Catherine admitted at the hearing "that she was using marijuana during her pregnancy" and had told a doctor and a representative from the Agency that, "while it might not be good for her baby, she needed to take care of her needs in order to be able to take care of her baby." (*Id.*). Critically, the court concluded that A.P. "is an abused child *because* his mother knowingly endangered him in utero with her continued use of THC throughout her pregnancy." (Emphasis added.) (*Id.*).

{¶5} On April 29, 2024, the court held a disposition hearing at which time A.P. was returned to Catherine. The trial court granted protective supervision to the Agency and ordered Catherine be subject to certain restrictions in addition to complying with the case plan. On July 25, 2024, after again noting A.P. had been

found to be an abused child pursuant to R.C. 2151.031(C), the court terminated the Agency's protective supervision and closed the case. Nevertheless, the trial court ordered that certain restrictions continue—including restrictions on Catherine.

## II. ASSIGNMENTS OF ERROR

{¶6} Catherine raises six assignments of error for our review:

### First Assignment of Error

**The trial court's adjudication of A.P. as an abused child was against the manifest weight of the evidence.**

### Second Assignment of Error

**The trial court erred in permitting hearsay testimony regarding neonatal abstinence scoring that were not performed by the testifying doctor nor included in any admitted business-records.**

### Third Assignment of Error

**The trial court erred by permitting leading questioning by the prosecutor of her own witness on re-direct examination contrary to Ohio R. Evid. 611(C).**

### Fourth Assignment of Error

**The trial court erred by permitting expert witness testimony from Dr. Mirsa when he was not properly qualified as an expert under Ohio R. Evid. 702.**

### Fifth Assignment of Error

**The trial court erred in allowing irrelevant and prejudicial evidence regarding Appellant's prior interactions with HCJFS and the court regarding Appellant's other children.**

**Sixth Assignment of Error**

**The trial court erred by improperly permitting testimony as to the results of a breath test after Appellant's OVI arrest without the proper foundation.**

## III.    DISCUSSION

{¶7}    We only consider the first assignment of error because our ruling on that matter moots the other assignments of error.  *See* App.R. 12(A)(1)(c).  In the first assignment of error, Catherine argues her "alleged conduct could not support a prosecution under R.C. 2919.22, and therefore cannot support a finding of abuse under R.C. 2151.031(C)."  (Appellant's Brief at 8).  Although we do not agree with all of Catherine's argument, we agree that the trial court erred in deciding A.P. was an abused child pursuant to R.C. 2151.031(C), as explained below.

### A.    Applicable Law

{¶8}    An abuse case is initiated by the filing of a complaint in juvenile court, and the complaint is the legal document setting forth the allegations that form the basis for juvenile court jurisdiction.  *In re L.S.*, 2020-Ohio-5469, ¶ 10 (3d Dist.), citing Juv.R. 2(F), Juv.R. 10, Juv.R. 22(A), R.C. 2151.23, and R.C. 2151.27(A).  The complaint "shall contain the numerical designation of the statute or ordinance alleged to have been violated."  Juv.R. 10(B)(1).  A complaint may be amended prior to the adjudicatory hearing.  Juv.R. 22(B).  "The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint."  *In re L.S.* at ¶ 10.  "If allegations in the complaint are

not proven by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint." *Id.*; *see also* R.C. 2151.35(A)(1). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶9} Under R.C. 2151.031(C), an "abused child" is a child who "[i]s endangered as defined in [R.C. 2919.22], except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child." In turn, R.C. 2919.22 provides that "[n]o person, who is the parent . . . of a child . . . shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A). Unlike division (E) of R.C. 2151.031, division (C) utilizes the criminal code to define an abused child. Stated differently, any child who is the victim of an endangering children offense pursuant to R.C. 2919.22 is considered to also be an abused child for purposes of Chapter 2151 of the Revised Code.

**B.** **Analysis**

{¶10} We consider whether clear and convincing evidence established that A.P. was an abused child within the meaning of R.C. 2151.031(C). The Supreme

Court of Ohio has held that "R.C. 2919.22(A) does not create a statutory duty which is breached when a parent uses [illegal drugs] prior to the child's birth." *State v. Gray*, 62 Ohio St.3d 514, 515 (1992). Thus, "R.C. 2919.22 does not apply where a mother abuses drugs during her pregnancy." *Id.* at 518. Accordingly, Catherine's admitted use of marijuana or THC during her pregnancy does not support a claim that A.P. is an abused child as defined by R.C. 2151.031(C). *Id.* at 515, 518; *Huffman v. Eachus*, 2019-Ohio-910, ¶ 34 (3d Dist.) (although mother admitted she used marijuana while pregnant, such conduct does not necessarily result in the child being an abused child as defined by what is now R.C. 2151.031(C)). Yet that conduct was the trial court's specific basis for determining, by clear and convincing evidence, that A.P. was an abused child as defined by R.C. 2151.031(C). The trial court concluded A.P. "is an abused child because his mother knowingly endangered him in utero with her continued use of THC throughout her pregnancy." (Apr. 15, 2024 Judgment Entry). Therefore, the trial court's decision conflicts with the binding law set forth in *Gray*.

{¶11} The Agency does not address *Gray*. Rather, it attempts to distinguish our decision in *Huffman* by pointing out that the evidence here included "a lab result showing [A.P.]'s urine tested positive for marijuana at birth as well as [in] the umbilical cord blood," thereby providing "clear and convincing evidence showing A.P.'s health and welfare were harmed as a result of [Catherine's] prenatal alcohol and marijuana use." (Appellee's Brief at 9-10). It appears the Agency's argument

is based on a separate discussion in *Huffman* of what is now division (E)—not (C)—of R.C. 2151.031, which provides that an "abused child" includes a child who, "[b]ecause of the acts of the child's parents . . . , suffers physical or mental injury that harms or threatens to harm the child's health or welfare." R.C. 2151.031(E). While the Agency may have had a strong case if it had alleged A.P. was an abused child as defined in division (E) of R.C. 2151.031, it never made that allegation in its complaint or amended complaint. *See In re Baby Boy Blackshear*, 90 Ohio St.3d 197, 2000-Ohio-173 (2000), syllabus ("[w]hen a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C. 2151.031(D) [now (E)], per se an abused child"); *Huffman* at ¶ 32 (discussing *In re Baby Boy Blackshear*). Instead, the Agency specifically amended its complaint prior to the adjudicatory hearing to substitute the basis of its complaint from division (D) to (C)—never (E)—and the trial court determined A.P. was an abused child as defined by R.C. 2151.031(C), not (E). *See In re E.M.*, 2015-Ohio-1392, ¶ 12 (6th Dist.) ("the trial court's finding that E.M. was an abused child based upon appellant's heroin use 'approximately five (5) weeks prior to birth, at which time the fetus was viable' unduly expands the narrow holding fashioned by the *Blackshear* court").

{¶12} Catherine's first assignment of error is sustained. Our ruling on the first assignment of error moots the other assignments of error. *See* App.R. 12(A)(1)(c).

## IV. CONCLUSION

**{¶13}** For the foregoing reasons, Catherine's first assignment of error is sustained. We reverse the juvenile court's adjudication of A.P. as an abused child under R.C. 2151.031(C). Further, because the trial court terminated the Agency's supervision and closed its case while also issuing orders to Catherine and others, we find it incumbent on this court to also vacate the continuing orders contained in the trial court's July 25, 2024 judgment entry.

**{¶14}** Having found error prejudicial to the appellant in the particulars assigned and argued, we reverse the judgment of the Juvenile Division of the Henry Count Court of Common Pleas.

*Judgment Reversed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlm**